Morning, Counsel. Morning, Your Honors. May it please the Court, Peter Sanoukian, appearing on behalf of Appellants, Plaintiff and Cross-Defendant, ACTCA, a Member of the Alliance, and Cross-Defendants, FFCT, a Member of the Alliance, NYCT, a Member of the Alliance, and ICTLV, Inc. Collectively, we will refer to them as axis. All right. The key issue before the Court on this appeal is whether a trial court has the authority to order a new trial based on its determination that the verdicts are inconsistent. And this is going to invoke two standards of review. As to the question of whether the law exists allowing the Court to do so, that is a question you can refer, you can consider de novo. As to the question of whether the Court correctly applied the law, that is an issue that you decide under the deference standard. What's your strongest case this was abused to order a new trial here? Probably Zhang v. American Gem Seafood, which is the one that collects cases in other jurisdictions denying the Court the authority to order a new trial based on general, inconsistent general verdicts. Let's say I don't think it's inconsistent in terms of the evidence presented, but it is inconsistent with the jury instructions and especially with the verdict. In other words, you were there. You argued the case below. You were at the charge conference. And this district judge, you probably recall it better than I do, I thought in the charge conference he looked at you and said there's a problem of offsets here. I'm worried about multiple contracts and offsets. And yet no one seemed to have wanted to change singular contract to plural. No, that was actually a point that I raised. Yeah, you both raised it, but there was no correction. The verdict form ends up being given to them a single contract. That was the verdict form that the judge would approve. I know, but did you object to the verdict form? Yes, in the form of saying we could have a problem. We could have a problem and lo and behold, everyone predicted that you did. Yeah. But I don't see how that's not then an inconsistency directly sort of covered by, I'll forget the name of it or mispronounce it, but the Jimi Hendrix case with Judge E. Bell. You know what I'm talking about, enterprise, I think, or experience.  This court has really set a fairly confident precedent that if the jury instructions in the verdict form are contradicted by the ultimate, you have a situation of confusion and why not order a new trial, get it right. And sure enough, then the verdict form was exactly what you all were talking about it. So it looked like everything was done, predicted and then corrected. That's what I'm trying to say. That's a good question, Your Honor. I don't believe that experience Hendrix is directly on point that talks about a court's authority to order a new trial under Rule 50 and under Rule 59. And in particular, in that case, the Court of Appeals was considering what evidence the district court had reviewed to support it. And the district court had ruled to grant trial on both the Rule 50 and Rule 59. But in doing the Court of Appeals in reviewing that said no, under an examination under Rule 50, you have to look at all of the evidence that could support these verdicts as inconsistent, as not inconsistent. Again, I'll just, I'm not really focused on inconsistency because to me it would be, who knows, I wasn't there, but it would be logical. They thought, okay, the GoID study didn't involve real humans, so we're going to think those breaches were immaterial. And materiality is part of the equation here. I can understand what they did. I don't think it's inconsistent. My difficulty is the verdict form and the jury instructions and the fact that everyone saw this problem, but it wasn't corrected. So do it the right way, tell the jury, multiple contracts here, and then we get a verdict. I think the error was in both parties assuming that both sets of contracts would go the same way that the jury would grant. Therefore, that's confusion. Both parties were confused. I'm just being difficult to see how you respond. It's not that I have a pre-set view of this case. But you were remembering the exact moment that I'm remembering, which is at the charge conference. It seemed like everyone knew this could be a problem. It wasn't corrected, and therefore the new trial seems appropriate to correct it. The issue was raised by me and dismissed by the district court. That's a good point. Yeah. You saw it. Yeah. I mean, the district judge obviously was presiding over all this, and we can see what was argued to the jury in the openings and the closings, read the verdict form, read the jury instructions. And then you get this verdict that's kind of giving one side something, the other side something else. It doesn't quite line up with damages figures that people were asking for. So why was it an abuse of discretion under these circumstances just to say, look, we just can't be confident that the jury understood what it was supposed to be doing here? The reason that the new trial was granted, in the words of the district court, were because I can't reconcile these two verdicts with each other. They were inconsistent with each other. The damages are a really close match to what was asked for under each set of contracts. Under the GO-ID contracts, AXIS asked for $3,000,000,000. I'm sorry. No, we know the numbers. Yeah. It was close. $2,322,598. And the award given was an even- But it seems like now you're trying to piece it backwards, right? But I think wasn't it fair for the district court to say, well, this theory really wasn't presented to the jury? And the jury, as evidenced by the jury verdict form being a singular contract, you said that both sides were responsible for seeing that all the contracts would go together. And that's the way the case was tried. That's the way the jury was instructed. That's the way the verdict form came out. So I'm not sure that you can now go backwards and try to piece it together and say, well, it actually was presented, and that's how the jury saw it. It wasn't presented that way to the jury. In the closing arguments, both sides made a case for the separate breaches of the two series of contracts, and both parties presented a request for money for the separate for compensation under each set of contracts. So there was plenty before the jury on which they could have said, we find on the basket contracts in favor of Rhythm, and we find on the GO-ID contracts in favor of Axis. The damages awarded are consistent with that. They are both a function of rounding of the numbers asked. In the case of the award to Axis, the award was rounded down from $2,322,000 to $3,200,000. In the case of Rhythm on the basket case, they requested $847,551.19, and the jury awarded them the rounded up number of $900,000. How does this make any sense? I mean why just go from $847,000 to just $900,000, just a $53,000 bonus that nobody asked for? I mean it's confusing. And, you know, the numbers are close, but they're not – they don't really make much sense when you look at them together especially. Yeah, it's not clear why the jury chose to round or why they chose to round down in one's instance and round up in the other if that is what they did. Is it possible that they came up with these numbers by some completely foreign calculation not presented to them during trial? Of course it is. I mean I think your argument has to hinge on it being at least tied to some trial evidence. And so, you know, the numbers are in the ballpark of what each side had asked for on these respective contracts. But the argument would be better if they actually awarded the amounts the parties had asked for. I suppose – and I'm not sure we would be here if they had done that, but they didn't do that. That's correct, Your Honor. The other dispositive factor is that neither party objected to the verdicts at the time that they were read, and so the jury was dismissed. Once that happened, both sides, both Axis and Rhythm, waived any argument with inconsistency with the verdicts. And the court's action appears to be in excess of what the parties themselves could have requested through advocacy. I don't know why it was in this for Judge Snyder to have to do this all over again. I'm sure it was the last thing she wanted to have to do after all the work that had been put into this. So I think I can sympathize with her when she's seen all this and she gets the result and says, I just – if I'm going to let – as she herself said, if I'm going to let this sit, somebody is going to appeal that, and we're going to be back here again. Let's save the Ninth Circuit that. It is possible, Your Honor. The notice given was a single line in the tentative saying the parties should be prepared to discuss whether a new trial is necessary. I'm sympathetic that we aren't usually sort of investigating what might have been in the mind of the jurors. So I'm sympathetic to that point. But throughout the closing, opening, parties said the contract language is the same. The contract language is the same for the six basket contracts. They are internally identical. The contract language for the six GO-ID studies are both – are the same as to all the parties. But things like the overall – Contracts themselves are not. What was it that you all – your clinics had to adhere to? It's called general competent – what's the expression? General competent practices, I believe. Yeah, general competent practices. That was an argument made by the defense. Right. But therefore, am I right or am I wrong that there was an unlicensed doctor? There was a doctor who was not licensed to practice medicine. And yet that doctor was supervising clinical trials in both studies. Is that right or is that wrong? My understanding is that he was participating in the GO-ID study. Only the GO-ID? No. Well, he was there at the beginning when the contracts were signed for the basket study, but he had been replaced by the time actual clinical subjects had started being – I guess I'm thinking you were persuasive in closing. You're clearly a very talented trial lawyer, and you were saying no matter what, even if there were deficiencies, they're immaterial. And I was thinking, okay, well, that's a pretty compelling argument. The jury may buy it, immateriality, as to a study that didn't have human patients. But then it becomes problematic if some of the deficiencies were identical in both. So they didn't find immateriality as to the basket doctor unlicensed, but they might have. That just – that becomes even more confusing. So let me turn that into a question. You're thinking they're consistent because they might have found the breaches in the first trial immaterial? Is that your theory? Your Honors, I did want to reserve a couple minutes for my reflection. No, go ahead and answer that. Sorry. Yeah. What appears to be, and of course we are speculating, the jury's conclusion is that the work done by Axis on the basket trial was of such little value that Rhythm was entitled to get back all of the money he had spent under the contract. I see. And what their conclusion as to the GoID study was, was that, in fact, Rhythm had breached by not paying for work done by – I understand. Thank you. Thank you, Counsel. Thank you. Good morning, Your Honors, and may it please the Court, Alex Wyman on behalf of Rhythm Pharmaceuticals. After two jury trials presided over by the same trial judge, Axis is now asking this court to override that judge's discretionary case decisions. Each of these decisions is reviewed for abuse of discretion, and this court has recognized in the Experian-Cendrix case Your Honor mentioned that significant deference is warranted in this context because the trial judge, who presided over the trials and saw the evidence, is in the best position to determine whether a new trial is warranted. Are you familiar with the case he cited as his best example of the Ninth Circuit reversing a new trial order, the Zhang v. American Seafood case? I am, Your Honor. I am familiar with it because counsel cited it for the first time in their reply brief, and I would be happy to address it. But as a threshold matter, I would argue that Axis has waived that argument both by raising it for the first time in their reply brief – All right, well, you have the chance to respond to it, so go ahead. Yes, Your Honor. With regard to Zhang, the principle for which Axis cites that case is that a court may not order a new trial solely on the basis that the general verdicts were inconsistent. But that principle is inapplicable here for a couple of reasons. First, the district court here did not order a new trial on the basis that the general verdicts were inconsistent. As Judge Higginson mentioned, there were clear jury confusion references both prior to the verdict being rendered and in the court's colloquy in ordering a new trial. The record shows that the district court ordered a new trial because of weight of the evidence concerns and jury confusion, not simply because the general verdicts were inconsistent. Neither Zhang or the other cases that it cites holds that a court loses all Rule 59 authority simply because the verdicts happen to be inconsistent. So you agree it's not implausible that this jury said, okay, one study without humans, they're okay, but the study with humans, those deficiencies were material, and you're going to get your money back. That's actually a pretty plausible way to look at what they did. Your Honor, the question, though, is not whether it's plausible. It's whether the court abused its discretion in finding that the jury was likely confused or rendered a verdict that was against the weight of the evidence. Confusion is general. I'm apprehensive of that as a rule of law. So whenever a trial judge after the verdict thinks they might have been confused, even if there's a logical way to explain it, then that's essentially unreviewable? Or is that overstating what you're urging? I think that's overstating what I'm urging, Your Honor. What I am saying is that the trial judge who observed the evidence and witnessed the argument made to the jury is in the best position to determine whether the jury's verdict was the product of confusion and whether it was against the clear weight of the evidence. Here, the district court concluded as much in ordering a new trial, and it was precisely for the reasons that Your Honor was mentioning earlier. In discussing the verdict form and jury instructions, the court predicted that we may, in fact, have to do this again if the jury gets confused. But that sounds like judge confusion more than jury confusion. The judge said, I'm confused by what I'm about to do. Well, Your Honor, I think in hindsight we would all have done it differently, and in fact in the second trial the court did. But the experience Hendricks case Your Honor mentioned earlier is exactly on point. In that case, the Ninth Circuit found that the jury instructions were confusing to the jury and that the district court was well within its discretion to order a new trial on that basis. That is precisely what happened here. And so the court did not abuse its discretion in ordering a new trial. If I might add one more point on the Zhang case, because we did not have an opportunity to address it having been raised on the reply. The first point, as I mentioned, is that the court here did not order a new trial solely on the basis that the verdicts were inconsistent. That alone takes it out of the Zhang principle. But the Zhang rule itself does not say that inconsistent general verdicts can never be a basis for a new trial order. In Zhang, the rule there permitted inconsistent general verdicts to stand only where the verdicts were legally independent. Where they were, quote, neither is predicated on the other. Where the legal conclusions by the jury are not mutually exclusive. That is a critical distinction from what we have here. In Zhang, the court was dealing with an apparent inconsistency between general verdicts. The jury had found discrimination under federal law, but not under Washington state law. But those claims could logically coexist because they had different burdens, different elements, and no legal relationship. As the court noted in that case, exoneration on one claim was not an affirmative defense on the other. But here the claims are legally mutually exclusive. Under California law, a plaintiff cannot recover for breach of contract unless it proves that it fulfilled its obligations under that contract. So for Axis to recover on Rhythm's breach, the jury had to find that Axis performed. No comparative fault? No, Your Honor, not in the contract case. So really the contradiction is with the jury verdict saying one contract? That is one contradiction, yes, Your Honor. It doesn't really matter what the lawyers argued. Is that correct? In other words, is the jury confusion and the contradiction with the jury instructions and the verdict alone? Even if when we read the closing, Axis actually did argue that we have to look at these contracts plural. Is it because when they were presented with the actual verdict form, it just didn't allow them to do what they did? No, Your Honor, I wouldn't go that far. I think that had the case been presented to the jury in a way that allowed them to parse the different contracts and award damages for breaches on separate sets, then we might not be here. But that is not what happened, and that's not what the district court observed in ordering a new trial. To the contrary, the district court noted that the evidence on the contracts presented to the jury was all the same. And, in fact, if Your Honors look at the record and the way that the case was— And if we disagree with that and we do see evidence presented in the record that could have allowed the jury to consider the contracts individually, how do we proceed with the analysis from there? We just look at the quantum of evidence? We look at the way it was argued? Your Honor, I— We look at it in combination with the jury verdict saying contract singular? What do we do if we think that there is some evidence in the record that could allow a jury to split the contracts? Well, Your Honor, I think the inquiry is narrow. The question for this court is whether the trial court, in looking at that same record, abused its discretion in finding that the jury was likely confused and that the verdict was against the weight of the evidence. And I would note, again, that Experience Hendricks dictates that the Ninth Circuit is to grant significant deference to a trial court in this context because it is the trial court who is presiding over the jury trial, witnessing the evidence, assessing the credibility of the witnesses. And the trial judge is in the best position to make the determination of whether there was jury confusion or whether the verdict was against the weight of the evidence. This seems like, in hindsight, you know, the second trial addressed these issues. Why was this not considered in greater depth, you know, by both sides beforehand to say, well, we have 12 contracts and two studies. Maybe we shouldn't have a jury instruction that talks about breaching the contract. It's a great question, Your Honor, and hindsight is 20-20. And obviously, for the second trial, the parties in the court decided to do it differently. But I would note that that is precisely the reason why the new trial order should be affirmed. As Counsel for Axis stated in his own argument a minute ago, there was an error here. The parties assumed, and presumably the court assumed, that the jury would treat all contracts as the same and find that one party breached on all or the other party breached on all. Obviously, that was an error, a poor assumption by everybody. And for the second trial, everything was done differently. But that is precisely the reason why it was appropriate and indeed necessary for the district court to order a new trial after that verdict. When I was just thinking, it is confusing. And so I was trying to think of what's logical, and it struck me that when I read the closing argument, maybe this jury just thought any deficiencies were immaterial as to a study that didn't involve humans. These were small recording incidents or whatever they were. It never jeopardized human. But I think opposing counsel instead at the podium has proffered something that I hadn't focused on so much, which is in the GoID case, you've got tons of data. So the jury just thought you need to pay for it. You did get a lot, whereas in the basket case, you got virtually none. And therefore, you don't have to pay. It's certainly possible, Your Honor, but I believe, as Your Honor noted in Axs' counsel's argument, we're doing something here that we don't normally do, which is trying to get into the minds of the jurors. It is speculation, and that is not the issue before the court. The issue is whether the trial judge who presided over the trial abused its discretion in ordering a new trial. Is that tethered to whether it was a fair trial to the movement? You move for a new trial. Doesn't Rule 59 require that it be shown to be unfair? Am I getting it mixed up? Your Honor, just for clarification, neither party moved for a new trial. The judge did it sui sponte on the basis that it was – So on the fairness prong, that's usually asked in relation to the movement. Yes. But when you're in the world of sui sponte, new trial orders, are we looking at fairness, or is it a concept as vague as confusion? No, Your Honor. We're looking at the standards set forth in Experience Hendricks, which is whether the court acted within its discretion in finding that a new trial was necessary to prevent manifest injustice. Manifest injustice. Okay. Your Honor, I did want to address the one other argument that Axs has raised for the first time on this appeal, and that is this whole notion that the jury's initial verdict was explainable on the basis that it found for Axs on the Go-ID contracts and Rhythm on the basket contracts. While, as Your Honors noted, the numbers are close, that argument has been waived by Axs by both failing to raise it before the district court and, in fact, raising an inconsistent position that contradicts that position before the district court. As Your Honors probably saw in the record below, Axs did not argue that Rhythm breached the Go-ID contracts and Axs breached the basket contracts. To the contrary, Axs argued that Rhythm breached, quote, a larger number of contracts and Axs breached, quote, a smaller number, an 80-20 apportionment, to be exact. Now, on appeal, they're arguing not that Rhythm breached 80 percent of the contracts and Axs breached two. Well, both sides are saying waiver. It's a bit unusual when a trial judge sua sponte orders a new trial. And we're talking about the black box of a jury room. So I sort of don't blame either of you for struggling a teeny bit in district court and then presenting your best arguments to us. Thank you, Your Honor. I will say on the waiver point that Axs has raised, we cannot waive the district court's ability to sua sponte order a new trial, so there's no issue of waiver there. But with regard to their position here, they did waive the argument that they bring here because they are arguing now that each side breached exactly six contracts. There were six GoID contracts and six basket contracts. Below, before the district court, they argued that Rhythm breached approximately 80 percent of the contracts while Axs breached 20 percent. That is a contradiction and is inconsistent. And under the Momox Casillas case we cited in our briefs, a party waived an argument that is inconsistent with the arguments that it employed before the district court. Counsel, let me ask you this. It's not going to weigh one way or the other. I'm just curious. Do you recall how long the jury was out on the first trial? I believe it was about a little bit less than a day, Your Honor, but I'm not 100 percent sure. I believe we closed, they took the afternoon, and then we got a verdict the next day. They were probably deliberated for six or seven hours is my best estimate, but I don't recall specifically. With the little time I have left, I will briefly touch on Axs' remaining arguments, unless the court has any further questions on the new trial order. As to the second discretionary trial court decision challenged by Axs, the district court did not abuse its discretion by amending the pretrial conference order to allow Rhythm to introduce long-disclosed evidence and witnesses to address Axs' surprise tactics during the first trial. Rhythm sought to amend the pretrial conference order in advance of the retrial to redesignate an expert witness from rebuttal to affirmative and to add 25 exhibits and a few witnesses to rebut Axs' principal Dr. Hazen's unexpected testimony during the first trial. In considering this amendment, the district court expressly applied the manifest injustice standard that Axs' claims was required, and after considering the record, the court found that the amendment was warranted because the proposed additions were based on what was testified to in the first trial and would cause no surprise to Axs. This is a textbook example of application of the Galdanos factors that we cited in our brief. There was no surprise, no prejudice to Axs. Axs had ample ability to cure any purported prejudice they felt existed. They availed themselves of none of the opportunities afforded to them by the district judge, including to depose any additional witnesses or to redesignate an expert witness. The amendment had no adverse impact on the schedule of the trial, which proceeded on time, and there was no willfulness or bad faith on the part of Rhythm, and there has been no suggestion to the contrary. The last point I'll note on this argument is that this case, the Ninth Circuit held in Galdanos, that the Ninth Circuit will only reverse a district court's amendment of a pretrial conscience order if it results in prejudice to one of the parties, and Axs has not and cannot prove prejudice here. In fact, Axs' brief did not even cite the retrial transcript to show that any added witnesses' testimony affected the outcome. Lastly, turning to Axs' last argument, the district court did not abuse its discretion when it excluded exhibits that were not business records and that contained inadmissible settlement communications. The only argument that Axs makes on appeal with regard to this issue is that the court admitted them the first time and should have done so the second time, but that is not the law and that is not abuse of discretion. Axs does not argue that those documents should have been admitted because they were business records or did not contain settlement communications. Their only argument is that it should have been done again. And for all of these reasons, Your Honor, we would ask that this court affirm the district court's judgment in full. Thank you, Counsel. Thank you. Let's put a couple of minutes on. Your Honors, Counsel contends that there was great confusion about the verdicts and no one understood what they meant. The facts of the case show that's not true. For the second trial, the verdicts were changed to differentiate between the two contracts, so the two series of contracts so that the jury could rule on them separately. As they had apparently done in the first case, as they had done in the first case where they answered that there were breaches, both sides breached contracts but did not identify which contracts were breached. Counsel for Rhythm, Counsel for Axs, and the court all agreed that the jury was attempting to award damages under different contracts and that it would be fixed by a verdict making explicit what damages they wanted to award to whom under each series of contracts. Thank you, Your Honors. Thank you. Thank you very much, Counsel, to both sides for your argument. The matter is submitted.
judges: Higginson, NGUYEN, BRESS